BRAUN, Appellant, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Respondent.

*May 1—November 4, 1919.*

*Damages: Personal injuries: Sufficiency of evidence: Special issue: Negligence: Trial: Repeated use of the word "direct" in instructions: Ignoring elements of damages in instructions: Review: Harmless error.*

1. In an action for personal injuries sustained by plaintiff due to a derailment of defendant's train on which he was a passenger, an instruction on the measure of damages in which the court repeatedly used the word "direct" in stating that the injuries must have been a "direct result" of the accident, and that the damages must have "directly resulted" from the accident, is objectionable.

2. The trial court should have submitted in the special verdict the question relating to damages in the form requested by the plaintiff, viz.: "In the event that the plaintiff should be entitled to recover, at what sum should his damages be assessed?" instead of in the form submitted: "What sum would reasonably compensate the plaintiff for his loss and injury which was directly produced by the derailment of the train in question?"

3. An instruction on damages for personal injury which omitted several elements of loss proper to be considered by the jury, is erroneous where the instruction contains a clause that the jury should not include any other element.

4. Erroneous instructions on the measure of damages and the elements to be included were harmless as to plaintiff and not reversible error on his appeal, under secs. 2829, 3072m, Stats., where from an examination of the record the court is not convinced that if these errors had not occurred a more favorable result for the appellant might probably have resulted.

5. The conclusion arrived at by a consideration of the entire record, that the plaintiff had not suffered an injury to his head because of the accident, requires an affirmance of the judgment.

APPEAL from part of a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Affirmed.*

The plaintiff, a traveling salesman about thirty-three years of age, on March 10, 1917, sustained personal injuries by reason of the derailment of one of defendant's trains on which he was riding as a passenger near Stark Station in Oneida county.

At the time of the derailment plaintiff was about in the center of the coach which was next to the smoking car. His testimony is to the effect that he was standing in the aisle, having just arisen, with one hand on the seat, and that by the jolting movement caused by the derailment he was thrown with great violence against the side of the coach, striking his right side against the corner of the window frame, injuring the musculospiral nerve of the right arm, causing great pain and partial paralysis of the arm. He also testifies that he was rendered unconscious and so injured that it caused a hemorrhage and nausea, and within a short time after the accident and before seeing any physician he bled from the nose and vomited blood. That there is a substantial loss of sensation on the right side of his body; such an injury to the head that there has been an entire loss of hearing in the right ear; a serious and permanent injury to his nervous system; a substantial impairment of memory; sexual impotence—all resulting in a condition described by some of the testimony as neurasthenia.

Dr. McMahon, a physician testifying on behalf of the

plaintiff, examined the plaintiff in June following the accident and subsequently.   He found impairment of vision of the right eye and a loss of hearing in the right ear, limitation of motion in the joints of the right arm, and muscular weakness, a substantial absence of sensation in the entire right side of the body.   That up to the time of the trial there had been an evident loss of weight and retrogression in his general appearance and in his nervous system.   Assuming that the plaintiff was injured as he stated he was by the accident, the witness believed that his condition is entirely due to the injury he sustained at the time of his accident, and that he has both organic and functional disturbance.   Assuming an accident, he has had either a hemorrhage into the skull cavity or else he has also had possibly a fracture at the base of the skull on the right side of the head.   He may show some improvement from time to time, but the witness did not think that plaintiff will ever be a well man again and he may get worse, and that unless he shows a very marked degree of improvement he will never be able to carry on his regular business.

Other medical testimony is to the effect that he has a form of psychic or mental epilepsy, due to an injury to his brain on March 10, 1917, assuming that he was injured as he testified.   Also that his function of equilibrium is substantially impaired, caused by a pressure within the labyrinth of the ear.

Defendant's medical testimony tended to indicate that there was a loss of sensation on the right side of the body attributable to the injury to the arm, that there was no evidence of any injury having been caused to the head or ear at the time of the accident, and that there was no ground for supporting the claim that there was any injury to the head at the time of the accident, or any such result as claimed by the plaintiff, and that the result of the tests made on examinations of the plaintiff indicated that some of

the conditions of which he complained were rather assumed than existing.

Plaintiff had been thrown from an automobile in June, 1915, at which time, according to a report he made in connection with an application for compensation, he stated that he had been bruised on his right side.

The jury by special verdict found that there was negligence on the part of the defendant which was the proximate cause of plaintiff's injury, and assessed his damages at $2,500. After verdict plaintiff moved for an order setting aside the jury's assessment of damages and a new trial on that issue or for an order setting aside the entire special verdict and granting a new trial. These motions were denied and judgment was directed in favor of the plaintiff for the $2,500 damages and costs, without prejudice to the rights of the plaintiff to take an appeal, and from judgment entered in accordance therewith plaintiff has appealed.

For the appellant there was a brief by *Drew, McMahon & McMahon,* attorneys, and *Alma Barry,* of counsel, all of Milwaukee, and oral argument by *Alma Barry* and *Stephen J. McMahon.*

For the respondent there was a brief by *W. A. Hayes* of Milwaukee, attorney, and *C. B. Bird* of Wausau, of counsel, and oral argument by *Mr. Bird.*

The following opinion was filed May 27, 1919:

ESCHWEILER, J. Plaintiff's main contention on this appeal is that the damages awarded by the jury were inadequate and that such result should be set aside and a new trial had for the reasons (1) that the form of the question in the special verdict as to the damages was wrong; (2) that the court erred in its instructions upon the subject of damages; (3) that the court erred in excluding evidence offered by plaintiff, or in admitting evidence offered by defendant on the subject of damages; (4) because a new trial should be

had on the ground that such award of damages was grossly inadequate, contrary to the overwhelming evidence and the law, or as an improper exercise of their duty by the jury.

The plaintiff requested the submission of the following question:

"5. In the event that the plaintiff should be entitled to recover, at what sum should his damages be assessed?"

The court refused to submit such question and did submit the following:

"5. What sum would reasonably compensate the plaintiff for his loss and injury which was directly produced by the derailment of train in question?"

This was answered by the jury at $2,500. In instructing the jury upon this question the court said as follows:

" . . . You are simply to say what the plaintiff's direct loss and injury amounts to when measured in money. In arriving at the amount of such loss and injury the jury should bear in mind that you are to include only such loss and injury as were the *direct* results of the derailment in question. With that limitation in mind you should, in answer to this question, name such sum as you find from the preponderance of the evidence, to a reasonable certainty, would be required to fairly *compensate the plaintiff in money* for, first, such loss of *time and earnings already suffered* and such as he is *reasonably certain to suffer* in the future, and for, second, such pain and suffering as he has *already endured* and such as he is reasonably *certain to endure* in the future, and for, third, such *reasonable expenses for medical and surgical care, treatment, and nursing* as he has in good faith incurred and will incur in the future in reasonable good-faith efforts to cure himself from the injuries received by him, all as the *direct* result of the derailment of the train in question. *You should not include any other element.*

"You should, of course, exclude from your consideration all loss and injury sustained by the plaintiff as the result of any other injury than the one received at the time of the derailment in question, *and all loss and injury resulting*

*from disease wholly disconnected* from the injury received at the time of the derailment in question. . . .

"(5) There is no mathematical rule by which you can compute with certainty the exact amount of plaintiff's loss, but you are to take into consideration all of the facts and circumstances shown from the evidence, and therefrom, in the exercise of your soundest judgment, fix upon such sum as you believe would be fair compensation, in money, for the loss and injury sustained by the plaintiff as the *direct result* of his injury received at the time of the derailment."

At another portion of the charge stating the issues, the court said that it would become the duty of the jury to determine the question of what consequences of loss and damage to plaintiff had *directly* resulted from the derailment in question.

We think there is proper foundation for the criticism made by the plaintiff of the repeated use of the word "direct" as it appears in the charge before us.

In a number of cases this court has held that in charging the jury as to their duty in determining whether or not injuries sustained were, under the law, to be attributable to the negligence of a defendant, the words "direct" and "proximate" do not have the same meaning and are not interchangeable terms. *Wills v. Ashland L., P. & St. R. Co.* 108 Wis. 255, 261, 84 N. W. 998; *Mauch v. Hartford,* 112 Wis. 40, 58, 87 N. W. 816; *Wheeler v. Milner,* 137 Wis. 26, 28, 118 N. W. 187; *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215, 220, 78 N. W. 442.

While that distinction was made in cases where the question to be determined was whether the injuries were the proximate result of defendant's negligence, rather than as in the case before us where the question is whether the particular damages complained of were the result of the injuries suffered by reason of the negligence of the defendant, being one step beyond the situation presented in these cases, yet where the two questions are, from their nature, so

closely associated, it is the safer course to recognize this distinction for each as well as for the one. The trial court in his decision on this point suggests that the word "direct," as used by him in the charge and in the fifth question of the special verdict, would not, in its ordinary acceptation, restrict the jury's consideration to damages which developed on the very day of the injury; yet just such suggestion would be as appropriate to the charges condemned in the above cited cases as herein. Therefore the form suggested by the plaintiff for the fifth question in the special verdict, being the usual one and not subject to the objection here discussed, should have been given rather than the form adopted by the trial court.

The court charged the jury in substance that there were three elements of damages for them to consider: First, loss of time and earnings already suffered and such as he is reasonably certain to suffer in the future; second, such pain and suffering as he has already endured and such as he is reasonably certain to endure in the future; and third, such reasonable expenses for medical and surgical care, treatment, and nursing as he has in good faith incurred and will incur in the future in reasonable good-faith efforts to cure himself from the injuries received by him—all as the direct result of the derailment of the train in question; then adding, "You should not include any other element."

There was omitted from this enumeration of the various elements of damages for their consideration such elements as may, under proper facts, be considered by a jury in such class of cases, namely, loss of the capacity to enjoy life, or any diminution of such capacity; any elements of impairment of plaintiff's memory; reduction of his intellectual capacity; diminution of his mental vigor, and any loss of sexual power.

No request on behalf of the plaintiff was made that the court should charge the jury as to any of these last enumerated elements, and in default of such request so to charge

we could not say that the general language used by the court in its charge would have been reversible error on account of such omission except for the use of the clause, "You should not include any other element." This phrase must be considered as in effect withdrawing from the consideration of the jury any other elements of damage than those specifically mentioned by the court and would therefore naturally exclude from their consideration the elements for the omission of which the plaintiff now complains. This made the charge erroneous. This is especially so in the view taken by the trial court in his opinion in passing upon the plaintiff's motions where he states that, if the plaintiff suffered all the effects which he claimed to have suffered from the derailment, then the damages awarded are entirely inadequate, and if such consequences were established to be the direct and natural consequences of such an injury it could not be compensated by the allowance of $2,500.

We have examined the other assignments of error made by plaintiff as to the trial court's rulings on the admission or exclusion of evidence and find no material or prejudicial error therein.

For the errors in the submission of this case to the jury by the form of the fifth question of the special verdict and the improper limitation placed upon the subject and possible amount of the damages which the jury might consider under the charge, it would be incumbent upon us to remand this case for a new trial except for the positive direction placed upon us by the legislative will as expressed in secs. 2829 and 3072m, Stats. These have been discussed and the effect to be given to them considered and determined in a number of decisions. *Oborn v. State,* 143 Wis. 249, 126 N. W. 737; *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 306, 139 N. W. 179; *Wiese v. Riley,* 146 Wis. 640, 644, 132 N. W. 604; *Rodermund v. State,* 167 Wis. 577, 584, 168 N. W. 390.

These statutes require us now to examine the record on

the points involved and refuse to grant a new trial unless from such examination this court is convinced that, if the errors found in·the record had not occurred, a more favorable result for appellant might probably have resulted. Such examination of the record does not so satisfy us.

Unless at the time of the derailment of the train the plaintiff did receive an injury to his head whereby some resultant damage was done to the inner right ear, then many of the elements of damage relied upon by plaintiff in his claim that the award of the jury of $2,500 was inadequate have no support in this case. He and members of his family testified to the effect that there was a discoloration of the side of the face and near the eye the day after the accident and for some time thereafter, and he testifies to having had hemorrhages shortly after the accident and at intervals for some time thereafter, and to being nauseated and vomiting blood within an hour or two of the accident. But the significant features of the case with reference to that situation are these: that neither at the time of the accident nor on the trip to Rhinelander after the derailment, nor while under the observation of his own physician and other physicians at Rhinelander during a period of several hours, does it appear that he mentioned to any one that there had been an injury to the head or ear or.that he had bled or been nauseated. None of these physicians at Rhinelander observed anything that indicated an injury to the head.

This conclusion we are compelled to arrive at from the consideration of the entire record, requires an affirmance of the result in the trial court.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on November 4, 1919.